IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> **James M. Kamara,** <br><br> Debtor. | Chapter 7 <br><br> Case No. 10-12766 (BLS) |
| **Andre Dastinot and Watchen Nelson,** <br><br> Plaintiffs, <br> v. <br><br> **James M. Kamara,** <br><br> Defendant. | Adv. No. 10-55491 <br><br> Related to Adv. Dkt. Nos. 1 & 8 |

| | |
|---|---|
| JOHN R. WEAVER, JR., P.A. <br> John R. Weaver, Jr. <br> 831 North Tatnall Street <br> Suite 200 <br> Wilmington, Delaware 19801 | HOLFELD & BECKER <br> Stephan J. Holfed <br> 107 S. Main Street <br> Camden, Delaware 19934 |
| Counsel for the Plaintiffs | Counsel for the Debtor |

# OPINION[1]

Before the Court is a complaint to deny discharge of debts pursuant to 11 U.S.C. §§ 523 and 727 (the "Complaint") filed by Plaintiffs Andre Dastinot and Watchen Nelson, who are judgment creditors of

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

James M. Kamara (the "Debtor" or "Defendant"). The Plaintiffs won a prepetition judgment in the Superior Court of Delaware against the Defendant for money owed on several agreements.[2] Following a trial on the merits, and for the reasons stated below, the Court will deny Plaintiffs' request to exclude this debt from discharge.

## I. BACKGROUND

Plaintiff Nelson met the Defendant in Smyrna, Delaware where they both attended the same religious services.[3] Nelson wanted to invest in real estate and she understood the Defendant to be experienced in buying and selling real estate. After consulting with her husband, Plaintiff Dastinot, Nelson entered into an agreement with the Defendant (the "First Agreement").[4] The agreement dated August 22, 2005 provides for a "$60,000 investment from Watchen Nelson to be invest [sic] in buying and selling Real Estate" whereby the Defendant "promises to pay $7,500 every two [months] on a $60,000 investment balance."[5] Both parties agree that the First Agreement was for the purpose of purchasing real estate[6] and in fact, the agreement is titled "Re: $60,000 Investment to Buy and Sell Real Estate Fro[m] August 24, 2005 to April 24, 2006."[7] Thereafter, the Defendant investigated buying

---

[2] *See Nelson v. Kamara*, No. CIV.A.08C-07-058-MMJ, 2009 WL 1964788, at *4 (Del. Super. Ct. June 30, 2009) (holding the Defendant liable for $335,527.84 plus post-judgment interest and costs, which includes interest calculated by the court).

[3] *See* Hr'g Tr. 7, September 11, 2012 [Adv. Dkt. No. 25].

[4] *See* Pls.' Ex. 1.

[5] *Id.* The Superior Court construed the agreement to mean that Kamara owed Nelson $7,500 every two months in interest. *See Nelson*, 2009 WL 1964788, at *1. As a supplement to the First Agreement, the parties stipulated that the amount outstanding under the First Agreement as of May 31, 2006 was $101,405, which was signed and notarized. *See* Pls.' Ex. 2. By the Court's calculation, the First Agreement gives rise to an annual effective interest rate of 75% without compounding.

[6] *See* Hr'g Tr. 32.

[7] Pls.' Ex. 1.

properties in Delaware for Nelson. He showed her several properties, but none of those properties were to Nelson's liking.[8]

Soon after, Nelson found a property, without the help of the Defendant, in Trenton, New Jersey that she wished to purchase. She asked the Defendant for $27,500, which was the purchase price. He gave her the money and Nelson bought the property.[9] The Defendant paid the $27,500 for the property, and made four other payments to Nelson over the next year or so of $1,000, $2,000, $5,000, and $10,000 for a total of $45,500.[10]

On March 1, 2007, Nelson and Kamara entered into another agreement (the "Second Agreement") whereby Nelson gave Kamara $113,830.34 in exchange for an agreement to pay back the loan amount in full plus interest of $1,000 per month.[11] The agreement is entitled "LOAN-Contract" and is signed by both parties. Shortly thereafter, Kamara entered into multiple agreements to buy commodities in China.[12] He used the proceeds from the Second Agreement to pay for these commodities and shipping expenses. He shipped the commodities from a Chinese exporter to Togo and Liberia, where relatives were to sell them on his behalf and forward him the profit. His brother in Liberia died at some point after receiving the goods and none of his relatives could locate either the commodities or the sale proceeds.[13] His nephew in Togo "sold the commodities, took the money, and left and went to Liberia" where Kamara never heard from him again.[14] Kamara admits that he has "no idea where the money went" and "no idea

---

[8] Hr'g Tr. 9.
[9] Hr'g Tr. 10.
[10] *See* Pls.' Ex. 3.
[11] *See* Pls.' Ex. 4. The loan amount was equal to 90% of the equity in Nelson's residence, which she took out with the bank and loaned to the Defendant.
[12] The Defendant testified to buying light bulbs and batteries from Chinese manufacturers for resale in Liberia and Togo. *See* Hr'g Tr. 40.
[13] *See* Hr'g Tr. 41.
[14] Hr'g Tr. 45.

where the commodities are."[15] Kamara also admits that he did not hire an investigator or attorney to look into the matter.

Plaintiff Nelson testified at trial that she intended the Second Agreement loan proceeds to be used for purchasing additional real estate.[16] It was the Plaintiffs' belief that the loan proceeds would be combined with the funds from the First Agreement and "the total funds together [would be used] to purchase some property."[17] Furthermore, Plaintiff Nelson testified that she was not aware of the Defendant's investment abroad until advised by her attorney sometime before the litigation in Superior Court.[18] Nelson further stated that purchasing commodities was never anticipated in the Second Agreement, she was never told of the purchases, and that if Kamara had asked, she would "definitely not" have given consent.[19]

Thereafter, on July 7, 2008, the Plaintiffs sued Kamara in the Superior Court of Delaware on the two unpaid loans. On June 30, 2009, and after a trial on the merits, that court awarded the Plaintiffs $193,697.50 on the First Agreement and $141,830.34 on the Second Agreement for a total of $335,527.84 plus post-judgment interest and costs.[20]

On September 1, 2010, Kamara filed for bankruptcy protection in this Court under Chapter 7 of the Code. On November 19, 2010, the Plaintiffs timely instituted this adversary proceeding, seeking to prevent Kamara from discharging their debt in his bankruptcy case. To that end, the Plaintiffs assert five counts against the Defendant under §§ 523(a) and 727 of the Code. They first allege that the Debtor failed to explain satisfactorily the loss of assets pursuant to § 727(a)(5) of the Code and therefore, the debt should be excepted from discharge. In Count II, the Plaintiffs allege that the debt should be excepted from dis-

---

[15] Hr'g Tr. 43-44.
[16] Hr'g Tr. 12.
[17] *Id.*
[18] Hr'g Tr. 15.
[19] Hr'g Tr. 16.
[20] *See Nelson v. Kamara*, No. CIV.A.08C-07-058-MMJ, 2009 WL 1964788, at *4 (Del. Super. Ct. June 30, 2009).

charge because the Debtor committed fraud and defalcation while acting in a fiduciary capacity pursuant to § 523(a)(4).[21] Next, the Plaintiffs allege that the debt should be excepted from discharge because the Debtor received money from the Plaintiffs by false pretenses, false representations, or fraud pursuant to § 523(a)(2)(A). In Count IV, the Plaintiffs allege that the debt should be excepted pursuant to § 523(a)(19)(B) as a debt from a judgment. Finally, Count V alleges that the debt should be discharged because the Debtor gave, offered, or attempted to obtain money for acting or forbearing to act pursuant to § 727(a)(4)(C).[22] The Debtor filed his Answer to the Complaint on April 13, 2011, denying all five counts. The Debtor denies fraudulently taking the Plaintiffs' money and asserts that both the First Agreement and the Second Agreement were simple loan contracts with interest payable. The Debtor does not deny that he did not make good on the two agreements, but nonetheless requests that discharge be granted.

On September 11, 2012, the Court conducted a trial and heard testimony of Watchen Nelson, Andre Dastinot, and James Kamara. The matter has been fully briefed and argued, and is ripe for decision.

## II. JURISDICTION & VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A), (I) and (J).

## III. PARTIES' POSITIONS

The Plaintiffs allege that the First Agreement and the Second Agreement were both entered into for the exclusive purpose of purchasing real estate.[23] Although the documents differ in many respects,

---

[21] Plaintiffs cite to 11 U.S.C. § 523(a)(2)(A) under Count II and later quote 11 U.S.C. § 523(a)(4). *See* Compl. ¶ 26. The Court construes the operative statute under Count II to be § 523(a)(4).

[22] Plaintiffs cite to § 727(a)(2)(C) although they quote § 727(a)(4)(C) in the Complaint. *See id.* ¶ 41. Therefore, the Court construes the operative statute in Count V as § 727(a)(4)(C).

[23] *See* Hr'g Tr. 8, 12.

Nelson contends that the Second Agreement was simply an extension of the First Agreement. The parties agree that the First Agreement was for the purpose of buying real estate, and the Plaintiffs contend that the proceeds from the Second Agreement were to be combined with the First Agreement proceeds and used to purchase real estate.[24] They further contend that the parties never contemplated, much less agreed to purchasing commodities abroad. If it had been mentioned, the Plaintiffs state that they would not have granted the Defendant authority to purchase the commodities.[25]

The Defendant accepts that the First Agreement was entered into for the purpose of investing in real estate, but contends that the Second Agreement was a simple loan. Kamara testified that he believed he "could use the money however [he] wanted because it was a loan."[26] Further, the document never stated that the Defendant needed to inform the Plaintiffs of the status of the loan money, except to pay Nelson $1,000 per month.[27]

## IV. LEGAL ANALYSIS

One of the fundamental purposes of the Code is to provide an opportunity "to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start." *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir. 1995). However, the Supreme Court has explained that there are limits to the "fresh start" doctrine. *See Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (stating that the Code reflects a congressional decision to exclude from discharge certain categories of debt including fraud, educational loans, and taxes, among others). The burden of proof "for dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard" and that burden is on the plaintiff. *Id.* at 291; *See also* Fed. R. Bankr. P. 4005 ("At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."). The same burden

---

[24] *See* Hr'g Tr. 12.
[25] *See* Hr'g Tr. 16.
[26] Hr'g Tr. 39.
[27] Hr'g Tr. 38.

of proof applies to objections to discharge under § 727. *See Wachovia Bank v. Spitko (In re Spitko)*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (stating that the burden of proof under § 727(a) is on the objecting party to prove their objection by a preponderance of the evidence).

The Plaintiffs argue that they are entitled to relief based upon the aforementioned five counts under §§ 523 and 727. For the reasons that follow, the Court finds that the Plaintiffs have not carried their burden by a preponderance of the evidence for the relief requested. The Court will discuss the counts in the order Plaintiffs listed them in the Complaint.

### A. Count I – Section 727(a)(5)

Section 727(a)(5) provides an exception to discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Generally, the provisions denying discharge to a debtor under § 727 are "construed liberally in favor of the debtor." *Rosen v. Bezner*, 996 F.2d 1527, 1534 (3d Cir. 1993). The Third Circuit has recognized that "denial of discharge is a 'harsh sanction[.]'" *Stuebben v. Gioioso (In re Gioioso)*, 979 F.2d 956, 962 (3d Cir. 1992). However, courts "will not relieve debtors from debts attributable to their own wrongdoing." *Hickman v. Wimbrow (In re Wimbrow)*, No. 11-12246-BLS, 2012 WL 3069527, at *2 (Bankr. D. Del. July 27, 2012).

Section 727(a)(5) applies to any unexplained disappearance or shortage of assets, and does not require a showing of fraudulent intent. *See Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 668 (Bankr. S.D.N.Y. 2008). The objecting party has the burden to show that the debtor at one time owned certain identifiable assets that are no longer available. *See Holber v. Jacobs (In re Jacobs)*, 381 B.R. 147, 168 (Bankr. E.D. Pa. 2008). Once the objecting party has made that showing, the burden shifts "to the debtor to offer a 'satisfactory explanation' for the unavailable assets." *Id.* (citation omitted).

"To explain satisfactorily" is not defined in the Code; however, courts have held that the debtor's explanation must be worthy of belief

and appear reasonable, "such that the court no longer wonders what happened to the assets." *See Panda Herbal Int'l v. Luby (In re Luby)*, 438 B.R. 817, 834 (Bankr. E.D. Pa. 2010) (citation omitted); *see also Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514 (B.A.P. 8th Cir. 2011) (holding that to be "satisfactory," the explanation must convince the judge that *assets are not missing*) (emphasis added). The "explanation must consist of more than 'vague, indefinite, and uncorroborated assertions.'" *GMAC Inc. v. Coley (In re Coley)*, 433 B.R. 476, 490 (Bankr. E.D. Pa. 2010) (citation omitted). The debtor, however, is not required to present documentary evidence for an explanation of asset loss to be "satisfactory," although documentary evidence is preferable. *See In re Hudgens*, 149 Fed. Appx. 480, 488 (7th Cir. 2005). Finally, the bankruptcy judge must assess the debtor's credibility and consistency, which are afforded great weight in determining whether an explanation is "satisfactory." *See First Federated Life Ins. Co. v. Martin (In re Martin)*, 698 F.2d 883, 886 (7th Cir. 1983) (holding that the bankruptcy judge's assessments of credibility are critical to the outcome of the case and these findings of fact will not be overturned unless clearly erroneous); *see also Kentzer v. Larkin*, 178 F.2d 532, 533 (2d Cir. 1949) (denying discharge because of the debtor's "contradictory and hardly credible testimony").

The Court found the Defendant's testimony at trial pertaining to the whereabouts of the loan money to be credible, if unfortunate. The Defendant testified that he used the money from the Second Agreement to make purchases and investments in commodities abroad.[28] Although the Defendant made unusual investments, there is no indication that the transactions described by the Defendant, and supported by documentary evidence, did not happen. In fact, the Plaintiffs do not assert that his explanation is not true. Rather, Nelson testified that she did not know that the Defendant was buying commodities, did not approve the purchases, and would not have agreed to the purchases if she

---

[28] Hr'g Tr. 40.

was informed about them.[29] This argument alone, however, does not satisfy the Plaintiffs' burden under the statute.

Finally, the Plaintiffs point out that the documentary evidence provided by the Defendant does not equal the amount of the Second Agreement loan[30] and therefore, the Defendant has not satisfactorily explained the loss of assets. However, neither the Code nor applicable case law mandate that the Debtor account for every dollar with documentary evidence. Therefore, the Debtor may still be discharged of this debt without a full showing of documentary evidence if the Debtor's explanation is credible. *See In re Martin*, 698 F.2d at 886.

Here, the Debtor has come forward with some documentary evidence to rebut the Plaintiff's assertions.[31] This corroborating evidence shows, consistent with the Defendant's explanation, that Kamara made investments in commodities in China.[32] Those commodities were shipped to Liberia.[33] It is true that the total invoices do not equal the full amount of the Second Agreement loan.[34] However, this alone does not require the debt to be excepted from discharge under § 727(a)(5). The Defendant has provided the Court with a satisfactory explanation of the loss of assets, which the Court finds to be credible and generally supported by corroborating documentary evidence. Therefore, the Plaintiffs have failed to carry their burden of proving this exception to discharge by a preponderance of the evidence. Pursuant to the "fresh start" policy and for the reasons above, the Court holds that the debt cannot be excepted from discharge under § 727(a)(5).

## B. Count II – Section 523(a)(4)

Section 523(a)(4) provides for an exception to discharge for an individual debtor "from any debt…for fraud or defalcation while acting

---

[29] Hr'g Tr. 16.
[30] Hr'g Tr. 60.
[31] *See* Pls.' Ex. 6, 7, 8.
[32] *See* Pls.' Ex. 7 (showing invoices from TE Electronic Manufacturing Limited, which is based in Fuzhou, China).
[33] *See* Pls.' Ex. 8 (showing invoices from Ningbo Sunshine Industrial Co., Ltd., which shipped the goods to Liberia).
[34] The total amount of invoices is $81,172.18. *See* Pls.' Ex. 7, 8.

in a fiduciary capacity…." 11 U.S.C. § 523(a)(4). Again, the burden of proof for all § 523(a) claims is on the creditor to prove entitlement to an exception by a preponderance of the evidence. *See Grogan*, 498 U.S. at 288. To succeed, Plaintiffs must first demonstrate a fiduciary capacity and then, prove fraud or defalcation.[35] *See Webber v. Giarratano (In re Giarratano)*, 299 B.R. 328, 337 (Bankr. D. Del. 2003) (holding that the plaintiff presented no proof that the debtor was acting in a fiduciary capacity and therefore, the first prong of the exception to discharge was not met).

For purposes of § 523(a)(4), the definition of "fiduciary" is much narrower in bankruptcy than its traditional common law definition. *See Int'l Fidelity Ins. Co. v. Marques (In re Marques)*, 358 B.R. 188, 194 (Bankr. E.D. Pa 2006); *see also Teamsters Local 533 v. Schultz (In re Schultz)*, 46 B.R. 880, 884 (Bankr. D. Nev. 1985)("The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context, thus excluding ordinary commercial relationships from the reach of § 523(a)(4)."). "Fiduciary capacity" is a question of federal law and "cannot be based on a constructive or implied trust." *See In re Wimbrow*, 2012 WL 3069527, at *2. The applicable non-bankruptcy law that creates a fiduciary relationship must clearly and expressly impose trust-like obligations on a party; if not, the court will not find that there was a fiduciary relationship. *See* 4 Collier on Bankruptcy ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011). Commonly, an express trust is created by a formal written agreement demonstrating clear intent of the parties. *Id.* As discussed more fully below, the Court finds that both loan agreements lack the requisite specificity and other indicia to give rise to a trust relationship or fiduciary capacity.

The Plaintiffs allege that this exception applies to their debt because the Defendant either acted fraudulently, or in the alternative defalcation, while in a fiduciary capacity. As evidence of a fiduciary rela-

---

[35] Plaintiffs do not allege, and the Court will not discuss, embezzlement or larceny under § 523(a)(4). *See* Compl. ¶ 32.

tionship, the Plaintiffs point to the superior experience and knowledge of Kamara in the field of real estate and Nelson's inexperience. Further, they allege that loaning money to Kamara for the purpose of investing in real estate creates the fiduciary relationship and the Defendant's investments abroad are proof of the fraud or defalcation. The Defendant denies acting with fraud or defalcation and argues that he was not acting in a fiduciary capacity because both agreements were loans.

The Court finds that the record does not support a showing that the Defendant acted in a "fiduciary capacity." The parties entered into two loan agreements. A simple contractual relationship does not, without more, create a fiduciary relationship. Furthermore, commercial terms, like the payment of fixed interest for the use of funds, normally indicate a debtor-creditor relationship, and not a trust relationship. *See Samson Res. Co. v. SemCrude, L.P. (In re SemCrude, L.P.)*, 407 B.R. 140, 154 (Bankr. D. Del. 2009). Here, each of the agreements entered into by the parties provided for the payment of substantial interest by the Defendant to the Plaintiffs; trustees typically do not directly pay interest to trust beneficiaries, rather the beneficiaries are usually entitled to proceeds of prudent investment by the trustee consistent with the terms and conditions of the trust.

The First Agreement was admittedly for the purpose of investing in real estate, but "fiduciary capacity" is to be narrowly construed so as to preclude ordinary commercial transactions. *In re Schultz*, 46 B.R. at 884. The Defendant violated the terms of the First Agreement by not repaying the loan and accrued interest as provided for in the agreement, but that by itself does not create the express trust necessary to form a "fiduciary capacity" under § 523(a)(4). Similarly, the Second Agreement was a simple loan, the effect of which was to give the Defendant unrestricted use of the money, which created a debt, and not a trust relationship. *See Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 499 (4th Cir. 2008). Because the Plaintiffs have not carried their burden of proving a fiduciary capacity in either agreement, the debt is dischargeable under § 523(a)(4). The Court does not reach the second prong of the analysis relating to fraud or defalcation.

## C. Count III – Section 523(a)(2)(A)

Section 523(a)(2)(A) provides for an exception to discharge for "an individual debtor from any debt…for money, property, [or] services…to the extent obtained by…false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). "False pretenses" require "proof of an implied misrepresentation promoted knowingly and willingly that creates a misleading understanding of the transaction by the plaintiff." *Monach Capital Corp. v. Bath (In re Bath)*, 442 B.R. 377, 388 (Bankr. E.D. Pa. 2010). Furthermore, "failure to disclose material facts on which a transaction depends constitutes false pretenses within the statute." *Id*. (citation omitted). On the other hand, "false representation" requires that the plaintiff show that "the debtor made a 'false or misleading statement about something.'" *Id*. (citation omitted). In order to establish the exception to discharge by "false pretenses," a plaintiff must prove by a preponderance of the evidence that: "(1) the [defendant] made an omission or implied misrepresentation;[36] (2) promoted knowingly and willingly by the defendant[]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[]; (4) which wrongfully induced the plaintiff[] to advance money, property, or credit to the defendant." *Id*. at 388-89. In addition to proving the necessary elements of false pretenses or false representation, the plaintiff must show justifiable reliance on the part of the plaintiff. *See Field v. Mans*, 516 U.S. 59, 74 (1995).

Courts will often turn to the "totality of the circumstances" because they recognize that a debtor will rarely admit to fraudulent knowledge or intent, which is required to prevail under this section of the Code. *See Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 166 (Bankr. E.D. Pa. 2008). Further, courts afford particular weight to "whether the debtor undertook any of the steps necessary to perform as

---

[36] The elements for "false representation" are identical except for the first element, which requires the plaintiff to prove an affirmative false representation. *See Bruce v. Gordon*, 262 B.R. 632, 636 (Bankr. W.D. Pa. 2001) (outlining the elements to recover under § 523(a)(2)(A) for "false representation").

promised." *Id*. at 167. Finally, when assessing whether a debtor intended to deceive a creditor, the court must look at the debtor's intent at the time the misrepresentation was made. *See Field*, 516 U.S. at 59.

The Plaintiffs argue that the Defendant obtained money by false pretenses and therefore, the debt should be excepted from discharge under § 523(a)(2)(A). They allege that both loans were made for the exclusive purpose of investing in real estate. The Plaintiffs testified that they viewed the second loan as an extension of the first, which was for the purpose of investing in real estate.[37] The Defendant disagrees, arguing that the second loan had no restrictions on the use of the funds.

After assessing the credibility of all witnesses and reviewing both loan agreements, the Court finds that the Second Agreement was a simple loan with no restriction or purpose other than the payment of interest. As such, it was not an extension of the First Agreement. First, the title of the document is "LOAN-Contract," which is completely different from the First Agreement entitled "Re: $60,000 Investment to Buy and Sell Real Estate." Second, there is no indication within the four corners of the Second Agreement that it was anything but a loan agreement with simple interest in the amount of $1,000 per month. In fact, the Superior Court found that "Nelson loaned Kamara $113,830.34 in exchange for interest accruing at a rate of $1,000 a month" and stated that the agreement "is clear on its face." *Nelson v. Kamara*, No. CIV.A.08C-07-058-MMJ, 2009 WL 1964788, at *2 (Del. Super. Ct. June 30, 2009). Given the conflicting testimony, the Court must base its finding on the document itself, which lacks any representation of purpose and is styled differently from the First Agreement. The Court is not satisfied that the Second Agreement was an extension of the First Agreement, nor is the Court convinced that there was consensus between the parties that the Second Agreement was for the limited purpose of investing in real estate.

As a simple loan with no restrictions, the Plaintiffs cannot demonstrate false pretenses or false representation in regards to the Second

---

[37] *See* Hr'g Tr. 32.

Agreement because there was no false representation or implied misrepresentation.  The Second Agreement allowed the Defendant to use the loan proceeds as he deemed appropriate.  This ends the inquiry because the Defendant made no misrepresentation, implied or otherwise, about using the loan money.

The Plaintiffs also cannot show "false pretenses" in the First Agreement.  The First Agreement was for the purpose of investing in real estate and the Plaintiffs testified that a portion of the loan was used for that purpose.[38]  Plaintiffs also testify that the Defendant showed them several properties in hopes of investing in property pursuant to the First Agreement.[39]  The Defendant undertook several steps necessary to perform as promised.  S*ee In re Giquinto*, 388 B.R. at 167.  By showing Nelson several properties and by using the loan money to buy real estate, the Defendant has shown that he did not enter into the First Agreement under false pretenses.  Therefore, the debt cannot be excepted from discharge under § 523(a)(2)(A).

### D. Count IV – Section 523(a)(19)

Section 523(a)(19) provides that an exception to discharge exists for any debt that is for:

> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; *and* (B) results, before, on, or after the date on which the petition was filed, from--(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding.

11 U.S.C. § 523(a)(19)(emphasis added).

---

[38] Hr'g Tr. 10.
[39] Hr'g Tr. 9.

The purpose of this exception is to help defrauded investors recoup their losses "and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer." *Smith v. Gibbons (In re Gibbons)*, 289 B.R. 588, 592 (Bankr. S.D.N.Y. 2003) (citing S. Rep. No. 107-146, at 16 (2002)). By the plain language of the statute, this exception may only be satisfied by establishing both prongs: (1) a violation of State or Federal securities law or common law fraud; and (2) debt that results from a judgment, order, or decree in a State or Federal proceeding. This case does not implicate State or Federal securities laws, and the judgment entered by the Delaware Superior Court likewise is not predicated upon violations of any State or Federal securities laws. Therefore, the debt cannot be excepted from discharge under § 523(a)(19).

### E. Count V – Section 727(a)(4)(C)

Section 727(a)(4)(C) provides that the court shall grant a debtor discharge unless "the debtor knowingly and fraudulently, in or in connection with the case…gave, offered, received, or attempted to obtain money, property, or advantage…for acting or forbearing to act." 11 U.S.C. § 727(a)(4)(C). Plaintiffs must prove, by a preponderance of the evidence, knowledge and fraudulent intent by the debtor and receipt of, or an attempt to obtain money, property or advantage for action or forbearance by the debtor. *See Jou v. Adalian (In re Adalian)*, 474 B.R. 150, 165 (Bankr. M.D. Pa. 2012). Collier explains that this section of the Code pertains specifically to extortion or bribery. *See* 6 Collier on Bankruptcy ¶ 727.06 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2011) ("Section 727(a)(4)(C) clearly contemplates the denial of a discharge to debtors who accept a 'bribe[.]'"). The Plaintiffs do not allege bribery or extortion by the Defendant. Because the Plaintiffs have not made such allegations, the Court concludes that the debt is not dischargeable under § 727(a)(4)(C).

## V. CONCLUSION

For all these reasons, the Court will deny the Plaintiffs' request on all counts. The debt is therefore dischargeable and all counts are dismissed with prejudice. An appropriate Order follows.

**BY THE COURT**:

Dated: November 20, 2012
Wilmington, Delaware

Brendan Linehan Shannon
United States Bankruptcy Judge